## Affidavit of Special Agent Michael P. Curran

I, Michael P. Curran, being duly sworn, do hereby depose and state the following:

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives of the United States Department of Justice ("ATF") and have been so employed since September 1998. Previously, I was employed as a Special Agent with the U.S. Immigration and Naturalization Service for approximately two years. My responsibilities include investigating and enforcing the federal firearms laws.

2. From my training and experience, I know that it is a violation of Title 18, United States Code, Section 922(a)(6) for any person, in connection with the acquisition or attempted acquisition of any firearm from a licensed dealer, knowingly to make false or fictitious oral or written statements intended or likely to deceive such dealer with respect to any fact material to the lawfulness of the sale of such firearm.

3. From my training and experience, I also know that it is a violation of Title 26, United States Code, Section 5861(l) for any person to make a false statement on a National Firearms Act ("NFA") application, knowing such entry to be false.

1

4.   The information set forth in this affidavit is based upon my investigation as well as information provided to me by other law enforcement officers. In submitting this affidavit, however, I have not included each and every fact known to me about the investigation, but only those facts that I believe are sufficient to establish probable cause in support of a criminal complaint and arrest warrant charging Samuel Jermaine LEWIS a/k/a Shaheed Lewis ("LEWIS") with the following crimes: false statements made on ATF Forms 4473 in connection with the purchase of firearms in violation of Title 18, United States Code, Section 922(a)(6); and a false statement made on a NFA application in connection with the purchase of a Mossberg short-barreled shotgun, in violation of Title 26 United States, Section 5861(l).

5.   Between August 2002 and September 2003, LEWIS purchased 15 firearms[1] for approximately $8,036. During that time, LEWIS was, for the most part, unemployed, taking classes at Clark University, and living in subsidized housing. In connection with these firearms purchases, including a Mossberg short-barreled shotgun, LEWIS knowingly made false written statements on ATF Forms 4473 to federally licensed firearms dealers intended or

---

[1] This affidavit describes the illegality of three of these firearm purchases.

likely to deceive such dealers with respect to facts material to the sale of such firearms. The false statements regard the identity of the actual purchaser for a H&K pistol and Bushmaster rifle and LEWIS' residential address (the place where the purchased firearm would be stored) at the relevant time periods.

### False Statements Made Regarding "Actual Purchaser"

6. On August 9, 2002, LEWIS purchased a H&K pistol, model USP Compact, .45 caliber, bearing serial number 29-006531, at Sparky's Gun Shop, a federally licensed firearms dealer located in East Main Plaza in Webster, Massachusetts. On January 21, 2003, LEWIS purchased a Bushmaster Rifle, model XM15, caliber .223, bearing serial number BFI402246 at Sparky's Gun Shop. Unbeknownst to the firearms dealer (Sparky's), LEWIS was not purchasing these firearms for himself but rather was purchasing them for Clarence Plant, a person who did not have a license to carry firearms at that time.

7. Prior to both purchases, LEWIS completed an ATF Form 4473. Every individual that purchases a firearm from a federally licensed dealer must fill out this form. The form requires the buyer to identify himself, provide a valid residential address, date and place of birth, social security number or other identifying number, and state of residency. Additionally, the

3

buyer must also certify on this form that he is the actual buyer of the firearm.

8. Question 12a of Section A of the ATF Form 4473 states:

Are you the actual buyer of the firearm(s) listed on this form? **Warning: You are not the actual buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual buyer, the dealer cannot transfer the firearm(s) to you.**

In response to this question on both forms, LEWIS responded "Yes". LEWIS signed and dated the bottom of Section A of the ATF Form 4473 for both transactions. By so doing LEWIS certified that his answers were true and correct, and stated that

**I understand that answering "yes" to question 12a when I am not the actual buyer of the firearm is a crime punishable as a felony. . . I also understand that making any false oral or written statement, or exhibiting any false or misrepresented identification with respect to this transaction, is a crime punishable as a felony. I further understand that the repetitive purchase of firearms for the purpose of resale or livelihood and profit without a Federal firearms license is a violation of law.**

9. Based upon interviews conducted and evidence seized in this investigation, LEWIS' statements on these ATF Forms 4473 that he was the actual buyer of H&K pistol and Bushmaster rifle purchased in August 2002 and January 2003, respectively, were false. LEWIS was not the actual purchaser of these weapons;

4

LEWIS offered to purchase and purchased these firearms for Clarence Plant using Plant's money.

10. On January 21, 2004, I interviewed Plant with two other federal law enforcement agents. Plant told us that in approximately August 2002, LEWIS approached Plant about purchasing firearms for him. LEWIS told Plant that because LEWIS had a license to carry firearms in Massachusetts and Plant did not, LEWIS could purchase firearms at gun shops for him. According to Plant, LEWIS suggested that if Plant were to give him money, LEWIS could purchase firearms for Plant in LEWIS' name so that Plant would have firearms to shoot when they went to the shooting range together.

11. Plant stated that on August 9, 2002, LEWIS purchased a H&K pistol, model USP Compact, .45 caliber, serial number 29-006531, at Sparky's Gun Shop, for Plant. According to Plant, in approximately August 2002, Plant gave LEWIS cash on multiple occasions to purchase the H&K pistol. On one such occasion, Plant traveled with LEWIS to an ATM machine near Sparky's Gun Shop and Plant withdrew cash. Plant gave the cash to LEWIS, and went into Sparky's with LEWIS. LEWIS then used Plant's money to to purchase the H&K pistol for Plant.

12. Plant stated that he watched LEWIS fill out the paperwork in LEWIS' own name making it look like he was the actual purchaser of the firearm. Plant also observed LEWIS pay the gun dealer for the pistol using the cash he had given to LEWIS. Plant indicated his name was not on any of the paperwork related to the firearm transaction because he could not legally purchase any firearms. At the conclusion of the transaction, the gun dealer handed the H&K pistol to LEWIS.

13. According to Plant, LEWIS purchased a second firearm for him in January 2003. In approximately December 2002, LEWIS offered to purchase for Plant a Bushmaster rifle knowing that Plant still did not have a license to carry firearms. Plant again provided LEWIS the cash to purchase the Bushmaster rifle. The rifle cost approximately $800.

14. Plant gave LEWIS cash towards this rifle on multiple occasions and LEWIS in turn made payments to Sparky's Gun Shop. On one occasion in December 2002, Plant and LEWIS went to an ATM machine in Webster, and Plant withdrew cash. According to Plant, Plant and LEWIS then went to Sparky's Gun Shop in Webster and LEWIS made a payment on a Bushmaster rifle using the money provided by Plant.

15. Plant accompanied LEWIS to the gun shop when the final payment on the rifle was made using Plant's money. Plant stated that he watched LEWIS give the money to the employee at Sparky's Gun Shop, and fill out paperwork for the rifle, making it look like LEWIS was the actual purchaser of the firearm when in fact Plant was the purchaser. Plant stated that he did not have his name on any of the paperwork related to the firearms transactions because he could not legally purchase firearms in Massachusetts. After the paperwork was completed, the gun dealer handed the Bushmaster rifle to LEWIS.

16. Plant stated that LEWIS kept the H&K pistol and Bushmaster rifle at LEWIS' residence at 236 Constitution Avenue (Great Brook Valley Apartments) because he had a safe for the firearms and could store them safely. According to Plant, he and Lewis agreed that the H&K pistol and the Bushmaster were owned by Plant and just stored at LEWIS's residence because Plant did not have a safe to store the firearms away from his children. Plant also did not want to keep the firearms at his residence because he did not have a License to Carry Firearms.

17. On January 20, 2004, with the assistance of the Federal Bureau of Investigation and Worcester Police Department, I executed a Federal Search Warrant at 12 Catalpa Circle,

7

Worcester, Massachusetts, the residence of Plant. During this search, the Bushmaster rifle, model XM-15, caliber .223, serial number BFI402246, which LEWIS purchased for Plant in January 2003, was seized.

18. Plant voluntarily provided banking statements that show at least one large cash withdrawal from an ATM machine within the vicinity of Sparky's during the relevant time period. For instance, Plant's bank statement shows a withdrawal of $202.00 from an ATM machine on East Main Street in Webster on December 16, 2002. Sparky's is also located on East Main Street. Plant stated that he gave this money to LEWIS as a payment towards the Bushmaster rifle LEWIS purchased for him at Sparky's. Records show that the Bushmaster rifle's sale was completed on January 21, 2003 but, according to Sparky's owner, many of LEWIS' purchases were done on a layaway system. Accordingly, LEWIS would make several cash payments towards a firearm before the gun was ultimately sold and transferred to him. Plant also indicated that he gave LEWIS money for the firearms from checks he cashed.

19. After LEWIS was interviewed by myself and other agents on September 26, 2003 (described below), LEWIS transferred, on paper, the H&K pistol and Bushmaster rifle to Plant. The transfer documents were dated October 2, 2003. Plant also told

us that in October 2003, at approximately the time LEWIS was approached by ATF, LEWIS gave Plant's H&K pistol and Bushmaster rifle to Plant to store at his residence, and filled out state paperwork to accompany this transfer. No additional money was exchanged between Plant and LEWIS. Plant has no receipts for these two firearms because they were purchased in LEWIS's name.

### False Statements Made Regarding Mossberg Purchase

20. On November 14, 2002, LEWIS signed a certification on an ATF Form 4 relating to the purchase of a Mossberg "Any Other Weapon", model 51683, caliber 12 gauge, serial number P997733 ("the Mossberg"). Form 4 is an application for a tax paid transfer and registration of firearms regulated under the National Firearms Act. This type of weapon is commonly referred to as a short-barreled shotgun. This particular weapon has a barrel length of 14 inches.

21. The Form 4 certification states that

I, Samuel Jermaine LEWIS, have a reasonable necessity to possess the machine gun, short-barreled shotgun, short-barreled rifle, or destructive device described on this application for the following reason(s): firearms collector, and my possession of the device or weapon would be consistent with public safety (18 USC 922(b)(4) and 27 CFR 178.98). UNDER PENALTIES OF PERJURY, I declare that I have examined this application and the documents submitted in support thereof, and to the best of my knowledge and belief it is true, correct and complete.

It is signed by LEWIS and dated November 14, 2002. On the application, in response to Question 2(a) Transferee's Name and Address, LEWIS lists his address as "59 Evelyn Street, apt. 503, Worcester, MA 01607."

22.  After a form 4 is completed, it is submitted to ATF and subject to approval before the firearm can be transferred. In April 2003, ATF approved LEWIS' application to purchase the Mossberg.

23.  On May 13, 2003, LEWIS completed the purchase of the Mossberg from Clarence Floyd, a federally licensed firearms dealer in Lunenburg, Massachusetts. Prior to the purchase, LEWIS completed an ATF Form 4473. Question #2 of Section A of ATF Form 4473 requires the purchaser to provide a "Residential Address (No., Street, City, State, ZIP Code; cannot be a post office box)".

24.  In response to Question #2, LEWIS listed "59 Evelyn St., Worcester, MA 01609" as his residential address. LEWIS signed and dated the bottom of Section A of the ATF Form 4473, certifying that his answers were true and correct, and stating that he understands that "making any false oral or written statement, or exhibiting any false or misrepresented

10

identification with respect to this transaction, is a crime punishable as a felony."

25.   Based upon information obtained from U.S. Department of Housing and Urban Development ("HUD") and interviews I conducted, LEWIS did not and could not live at 59 Evelyn Street. Thus, LEWIS' representations as to his residential address on both the ATF Form 4 and ATF Form 4473 were false.

26.   Special Agent Gene Westerlind of HUD advised me that from October 2002 until September 2003, LEWIS was a participant in a Worcester Housing Authority ("WHA") Transitional Housing Program (a homeless shelter program) and resided with his wife and three children in HUD public housing at 236 Constitution Avenue in Worcester. I have personally reviewed the WHA's records for 236 Constitution Avenue in Worcester. These records demonstrate that LEWIS and Cortez along with their children were accepted into the WHA's Transitional Housing Program and resided at 236 Constitution Avenue in Worcester from October 2002 through September 2003.

27.   According to these records, LEWIS and Cortez applied for public housing on August 19, 2002 as a married couple with three children. They were granted housing at 236 Constitution Avenue. According to WHA's records, on October 3, 2002, Lewis

11

and Cortez moved into 236 Constitution. During their tenancy, WHA maintained monthly progress reports on LEWIS and Cortez and documented home visits with both of them. These reports track the activities of LEWIS and his family while they lived at 236 Constitution.

28. The WHA file also contains a Verizon telephone bill in the name of Samuel LEWIS at 236 Constitution in Worcester. The bill is for the time period November 23-December 22, 2002. The telephone number on the bill is (508) 853-4968.

29. As part of this investigation, I also interviewed individuals who also lived at the Great Brook Valley housing project during the same time as LEWIS. Two individuals, one who lived at 246 Constitution and the other at 234 Constitution, verified that LEWIS was their neighbor and lived with his family at 236 Constitution until approximately September 2003.

30. Plant also indicated that LEWIS lived at 236 Constitution Avenue in the Great Brook Valley apartments for approximately 1½ years and moved out in October 2003.

31. Additionally, I obtained documents from Emanuel Village, a subsidized housing unit located at 59 Evelyn Street in Worcester, to determine whether LEWIS ever resided at this address. The documents confirm that LEWIS has never been a

tenant at 59 Evelyn Street. The documents, however, do indicate that LEWIS' mother, Sherriel Lewis, is a tenant at 59 Evelyn Street, residing in Apartment 503, and that she is the only legal resident listed on these documents. The house rules provided by Emanuel Village state that 59 Evelyn Street is part of a 75-unit apartment complex for elderly, disabled, and handicapped persons.

32. As part of this investigation, I also interviewed individuals who lived at 59 Evelyn Street during the time period October 2002 through September 2003 to see if anyone recalled LEWIS living there with his mother. The tenants I spoke with all responded similarly that LEWIS did not and could not (because he was neither elderly nor disabled) live at 59 Evelyn Street.

33. On September 26, 2003, I, along with other law enforcement officers, went to 59 Evelyn Street, Apartment 503, to interview LEWIS. LEWIS was not at that address. Massachusetts State Trooper Michael Sampson called (508) 853-4968 and spoke with Samuel LEWIS. Shortly thereafter, LEWIS met us in the parking lot of 59 Evelyn Street. LEWIS told me that he had lived at 59 Evelyn Street but had moved out. LEWIS stated that he had his Mossberg short-barreled shotgun at another location and he would retrieve it for investigators. We followed LEWIS to 236 Constitution Avenue, where he refused to allow us entry to his

apartment. LEWIS came out of his apartment and turned over the Mossberg to me. Before LEWIS relinquished the shotgun to us, I asked LEWIS for proof of registration for this firearm, and he failed to produce it as required by law.

34. Based upon the above information, I believe that probable cause exists to conclude that on or about August 9, 2002 and January 21, 2003, LEWIS, in connection with his acquisition of firearms (specifically, a H&K pistol, model USP Compact, .45 caliber, serial number 29-006531 and a Bushmaster Rifle, model XM15, caliber .223, serial number BFI402246) from a licensed dealer, Sparky's Gun Shop, knowingly made false or fictitious written statements, intended or likely to deceive such dealer with respect to a fact material to the sale of such firearms. LEWIS falsely represented that he was the actual buyer of these firearms, when in fact he was not, in violation of Title 18, United States Code, Section 922(a)(6).

35. In addition, based upon the preceding information, I believe that probable cause exists to conclude that on or about May 13, 2003, LEWIS, in connection with his acquisition of a firearm (specifically, a Mossberg Model 51683, short-barreled 12 gauge shotgun, bearing serial number P997733) from a licensed dealer, Clarence Edgar Floyd, knowingly made false or fictitious

written statements, intended or likely to deceive such dealer with respect to a fact material to the sale of such firearms. LEWIS falsely represented that his address was 59 Evelyn Street, Worcester, when in fact he was not, in violation of Title 18, United States Code, Section 922(a)(6).

36. Lastly, based on the above information, I believe that probable cause exists to conclude that on or about November 14, 2002, LEWIS knowingly made a false statement on a National Firearms Act application. I believe LEWIS provided a false residential address on the application signed by LEWIS on November 14, 2002 in violation of Title 26, United States Code, Section 5861(l).

_____
Michael P. Curran, Special Agent
U.S. Bureau of Alcohol, Tobacco,
Firearms and Explosives

Sworn and subscribed to me this 15th day of November, 2004.

_____
CHARLES B. SWARTWOOD, III
United States Magistrate Judge

15