UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL NO. 04-1831-CBS |
| v. | ) | |
| | ) | |
| | ) | |
| SAMUEL J. LEWIS, | ) | |
| a/k/a SHAHEED LEWIS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF DETENTION

The Government respectfully submits this memorandum articulating the factors supporting detention in this case and hereby requests that the Court consider the arguments contained herein in determining whether detention is warranted under 18 U.S.C. § 3142(f)(2)(A).  As described below, the Government has presented evidence that supports a finding of probable cause to believe that the Defendant Samuel J. Lewis a/k/a Shaheed Lewis (the "Defendant" or "Lewis") committed violations of 18 U.S.C. § 922(a)(6) and 26 U.S.C. § 5861(l).  Further, the Government has presented evidence concerning the Defendant's "history and characteristics" that clearly demonstrate that there is a serious risk that the Defendant will flee.  See 18 U.S.C. § 3142(g)(3). There are simply no conditions of release that will reasonably assure his appearance at trial and future proceedings.  Prior to being arrested for federal criminal violations, the Defendant told at least two individuals that he wanted to leave the United

1

States and travel or move to a country from which we could not extradite him.  Why would he now stay in the United States while awaiting trial on firearms charges and knowing there is a possibility he may be charged with more serious criminal charges.

**1.    The Weight of Evidence Supports Detention.**

The Complaint charges the Defendant with committing violations of 18 U.S.C. § 922(a)(6) by making false or fictitious written statements on three ATF Forms 4473 in connection with the purchase of three firearms: (1) H&K Pistol; (2) Bushmaster Rifle; and (3) Mossberg short-barreled shotgun.  These false statements concerned the identity of the actual purchaser and Defendant's residential address.  The Complaint also charges the Defendant with making, or causing the making of, a false entry on a National Firearms Act ("NFA") application, ATF Form 4, in connection with the purchase of a Mossberg short-barreled shotgun in violation of 26 U.S.C. § 5861(l).

The elements of 18 U.S.C. § 922(a)(6) are:

FIRST:      That the defendant made a false statement
            while acquiring a firearm from a licensed
            dealer;

SECOND:     that the defendants knew the statement was false;
            and

THIRD:      that the statement was intended or was likely to
            deceive about a material fact; that is, one which
            would affect the legality of the sale to the
            defendant.

The elements of 26 U.S.C. § 5861(l) are:

FIRST:      That the defendant made or caused the making of, a
            false entry on an application, return or record
            required by the National Firearms Act;

SECOND:     that such firearm was a weapon within the scope of
            and defined under the National Firearms Act; and

THIRD:      that the defendant knew that such entry was false.

The Government has presented evidence on each of these elements and established probable cause to believe the Defendant committed the charged crimes.

**A.    Defendant Made False Statements Regarding Identity of "Actual Purchaser" on ATF Forms 4473**

The evidence presented at the probable cause/detention hearing established that on two ATF Forms 4473 (Government Exhibits 2 and 3) relating to the purchase of a H&K Pistol and Bushmaster rifle, the Defendant falsely indicated that he was the actual buyer of these firearms when in fact the Defendant bought the pistol and rifle for Clarence Plant ("Plant"), a person who did not have a license to carry firearms at that time. Special Agent Curran testified that pursuant to ATF Forms 4473 and Government Exhibits 2 and 3, the Defendant purchased an H&K pistol on August 9, 2002 and a Bushmaster rifle on January 21, 2003 from Sparky's Gun Shop ("Sparky's"). On these forms, the Defendant had indicated in response to Questions 12a that he was the actual purchaser of these firearms. The Defendant had signed both of these forms certifying that his answers were true and

correct.  Special Agent Curran testified that based upon his interview of Plant, that he determined the Defendant's statements that he was the actual purchaser of the H&K Pistol and Bushmaster Rifle were false.

Special Agent Curran testified that he had interviewed Plant and Plant had provided the following information: (1) at some point prior to August 2002, the Defendant offered to purchase a firearm for him; (2) the Defendant offered to purchase a firearm for Plant knowing that Plant did not have a license to carry firearms and therefore could not legally purchase a firearm; (3) Plant accepted the Defendant's offer and gave the Defendant cash to purchase a H&K pistol; (4) according to Plant, the Defendant then used Plant's money to purchase a H&K pistol for Plant from Sparky's on August 9, 2002; (5) Plant accompanied the Defendant to Sparky's went the purchase was made and observed the Defendant fill out the paperwork/ATF Form 4473 in the Defendant's name making it look like the Defendant was the actual purchaser; (6) subsequently, the Defendant offered to purchase a second firearm for Plant; (7) Plant again accepted the Defendant's offer and the Defendant purchased a Bushmaster rifle for Plant in January 2003; (8) Plant again provided the Defendant the cash to purchase the rifle; (9) the rifle cost $820 and Plant gave the Defendant cash towards the rifle on multiple occasions and the Defendant in turn made installment cash payments to Sparky's;

4

(10) Plant accompanied Lewis when the final payment was made on January 21, 2003 and observed the Defendant fill out the paperwork/ATF Form 4473 in the Defendant's name making it look like the Defendant was the actual purchaser; (11) Plant and the Defendant agreed that the firearms would be stored at the Defendant's residence with the understanding that the firearms were owned by Plant; (12) in October 2003, after the Defendant was approached by ATF, the Defendant gave Plant's H&K Pistol and Bushmaster rifle to Plant to store at his residence and filled out state paperwork to accompany this transfer; and (13) Plant did not pay the Defendant any additional money at the time of this transfer.

Special Agent Curran also testified that Plant was not completely forthcoming with ATF at his initial interview. Plant did not disclose his knowledge or involvement in the Defendant's criminal activity until January 21, 2004 after a search warrant was executed on his home. As Special Agent Curran testified on cross-examination, at the time of Plant's disclosure about the Defendant's purchase of firearms for him, the Government had no evidence Plant had engaged in criminal activity. Thus, as Curran testified, there was no reason for Plant to fabricate a story that implicated himself in a criminal scheme. In January 2004, when Special Agent Curran executed a search warrant on the home of Plant and seized the Bushmaster rifle, Plant had a license to

carry firearms and the proper transfer paperwork had been filed on October 3, 2003 (seven days after ATF agents approached and briefly interviewed the Defendant) indicating Lewis had transferred two firearms to Plant.

Plant's statements that the Defendant purchased two firearms for him and made false statements on ATF Forms 4473 about the identity of the actual purchaser are corroborated by employees of Sparky's Gun Shop, Plant's own bank records, and the Defendant's actions.  For instance, Special Agent Curran testified that the owner of Sparky's was very familiar with the Defendant and had seen Plant accompanying the Defendant in his store on at least five occasions.

The Defendant's own actions, as related through the testimony of Special Agent Curran, also corroborate Plant's statements.  After ATF interviewed the Defendant on September 26, 2003, the Defendant, a person of little financial resources who had trouble making his child support payments of $400 per month (see Government Sealed Exhibit 6 ¶ 3), chose to transfer two firearms to Plant on October 3, 2003 in exchange for no money rather than sell the firearms to a firearms dealer.  On cross-examination, Special Agent Curran agreed that the Defendant's activities were consistent with a firearms collector and that collectors buy and sell firearms to firearms dealers.  On this occasion, the Defendant decided to transfer two of his firearms,

6

one of which cost $820, for free to a non-dealer.  The Government
contends and Special Agent Curran testified that his paper
transfer occurred without any associated monetary exchange
because Plant had already paid the Defendant for these firearms.
Additionally, Special Agent Curran testified that Plant's bank
records show at least one large cash withdrawal at an ATM machine
near Sparky's during the relevant time period.  <u>See also</u>
Government Exhibit 1 ¶18.

Statements of a cooperating witness are sufficient to
establish probable cause.  The Government routinely relies upon
the testimony of a cooperating witness at trial.

### B.    Defendant Made False Statements Regarding His "Residential Address" on ATF Form 4 and 4473

The evidence presented at the probable cause/detention
hearing established that the Defendant provided a false
residential address on ATF Form 4 and ATF Form 4473 in connection
with the purchase of a Mossberg short-barreled shotgun.[1]  Both
the ATF Form 4 and 4473 were introduced into evidence by
Government as Government Exhibits 4 and 5 respectively.

With respect to the ATF Form 4, Special Agent Curran
testified to the following facts: (1) that an ATF Form 4 was

---

[1] As Special Agent Curran testified, the Government also
contends that the Defendant provided a false residential address
on the ATF Form 4473 used in connection with the purchase of the
Bushmaster Rifle on January 21, 2003 but that offense was not
described in Curran's affidavit supporting the Complaint and is
therefore, not one of the currently charged offenses.

completed by Clarence Floyd, a federally licensed firearms
dealer, in connection with the Defendant's application to
purchase a Mossberg short-barreled shotgun; (2) that Form 4 is an
application for a tax paid transfer and registration of firearms
regulated under the National Firearms Act and this particular
type of Mossberg is subject to extensive government regulations
because it is easily concealable; (3) that the Transferee's Name
and Address listed on this Form was provided by the Defendant to
Mr. Floyd; (4) that on November 14, 2002, the Defendant signed
this form in the presence of Mr. Floyd and thereby declared that
he "examined" the application and it was "true, correct and
complete."; and (5) the Defendant indicated on this Form 4
application that his address was "59 Evelyn St., Apt. 503,
Worcester, MA 01607."

With respect to the Form 4473, Special Agent Curran
testified that (1) after the Form 4 application to purchase the
Mossberg was approved by ATF, on May 13, 2003 the Defendant
purchased a Mossberg "Any Other Weapon", model 51683, caliber 12
gauge, bearing serial number P997733; (2) prior to the purchase,
the Defendant completed ATF Form 4473, Exhibit 5; (3) Question #2
of Section A of ATF Form 4473 requires the purchaser to provide a
"Residential Address" including a correct street address; (4) in
response to Question #2, the Defendant listed his residential
address as "59 Evelyn Street, Worcester, MA 01607"; and (5) the

8

Defendant signed the ATF Form 4473 on May 13, 2003 and certified that his answers were true and correct.

Special Agent Curran further testified that he had investigated whether the Defendant had lived at, resided, or was a tenant at 59 Evelyn Street during the relevant time period, November 2002-May 2003. Based upon his investigation, Special Agent Curran determined that the Defendant's statements concerning his residential address on both the ATF Forms 4 and 4473 were false. Special Agent Curran testified that this conclusion was based upon Special Agent Curran's review of the records of the U.S. Department of Housing and Urban Development and the Worcester Housing Authority for 236 Constitution Avenue, Worcester in the Great Brook Valley Apartments; the records of Emmanuel Village for 59 Evelyn Street, Worcester; and interviews of the property managers at 59 Evelyn Street and tenants at Great Brook Valley Apartments and 59 Evelyn Street.

More specifically, Special Agent Curran testified that the records of WHA indicated that the Defendant and his family moved into 236 Constitution Avenue in early October 2002. The Defendant's family was accepted into the Transitional Housing Program of WHA and provided subsidized housing. As part of this program, the tenants/family are monitored and reports kept. According to the records of WHA, the Defendant and his family lived in 236 Constitution Avenue until October 2003. See also

9

Government Exhibit 1, ¶¶ 25-33. Special Agent Curran testified that other tenants of Great Brook Valley Apartment verified that the Defendant lived at 236 Constitution Avenue during the relevant time period (November 2002 and May 2003) as well as the Defendant's longtime friend Plant. Special Agent Curran also noted that the WHA records contained a telephone bill for 236 Constitution in the name of the Defendant. See also Government Exhibit 1, ¶ 28.

Special Agent Curran testified that 59 Evelyn Street is a subsidized housing development for elderly and disabled individuals and that the Defendant meets neither of these categories. Accordingly, he was not entitled to live at 59 Evelyn. Special Agent Curran advised this Court that the Defendant's mother was a tenant of 59 Evelyn Street and resided in Apartment 503. Curran also noted that based upon the records of Emmanuel Village, in early 2002, the property manager had granted the Defendant permission to stay as a guest in his mother's apartment for two weeks. Approximately two months later, the property manager sent a letter to the Defendant's mother indicating that the property manager had received complaints that the Defendant was still staying in the apartment and advised the Defendant's mother that the Defendant was no longer allowed to stay as a guest in her apartment at 59 Evelyn Street. After that warning letter was sent to the Defendant's

10

mother, Special Agent Curran testified that the property manager no longer saw the Defendant at 59 Evelyn Street and did not receive any more complaints. Additionally, Curran testified that other tenants at 59 Evelyn stated that the Defendant was not a tenant at 59 Evelyn. Nor did he live or reside there.

Regardless of whether the Defendant visited his mother at 59 Evelyn Street and stayed as a guest in her apartment for a period of 2 weeks to 2 months in early 2002, the evidence at the hearing was undisputed that the Defendant lived at 236 Constitution and not 59 Evelyn during the relevant time period of November 2002- May 2003. In addition to the testimony of Special Agent Curran, two additional individuals, one of whom is extremely familiar with the Defendant, confirm that he lived at Great Brook Valley Apartments and not with his mother at 59 Evelyn Street. <u>See</u> Government Sealed Exhibit 6, ¶ 5 and Exhibit 9, ¶ 8.

Even the Defendant's own actions reveal he lived at 236 Constitution and not 59 Evelyn. When Special Agents of ATF attempted to interview the Defendant on September 26, 2003, they went to 59 Evelyn Street, the address the Defendant had listed on the ATF forms. The Defendant was not at that address. The agents located the Defendant by calling him at his actual residential address, 236 Constitution Avenue. <u>See</u> Government Exhibit 1, ¶¶ 28, 33. Moreover, when the Special Agents requested the Defendant to retrieve his Mossberg, the Defendant

admitted that it was not at 59 Evelyn Street but was rather at another location.  The Agents then followed the Defendant by car to 236 Constitution where the Defendant obtained the Mossberg.

The evidence presented by the Government established probable cause to believe the Defendant lied about his residential address on ATF Forms 4 and 4473.  These false statements are sufficient to meet the materiality requirement of 18 U.S.C. §922(a)(6).  The First Circuit Court of Appeals has concluded that statements regarding the purchaser's residence are material.  See United States v. Crandall, 453 F.2d 1216, 1217 (1st Cir. 1972) (sale of firearms illegal unless purchaser's name, age, and place of residence are correctly recorded and misstatements on any of these matters constitute a misrepresentation of a "fact material to the lawfulness of the sale.").  In a case similar to that at issue here, the Seventh Circuit Court of Appeals, in an unpublished decision, held that a purchaser violated Section 922(a)(6) when he falsely indicated that he resided at his parents' address on ATF Forms 4473.  See United States v. Norris, 39 Fed.Appx. 361, 364, 2002 WL 850393, *3 (7th Cir. 2002).  The Seventh Circuit reasoned that ATF Form 4473 was designed to assist law enforcement in tracking firearms (as Special Agent Curran testified) and therefore, an applicant's misrepresentation as to his street address is material.  Id.

2.   **The History and Characteristics of the Defendant Support Detention.**

In determining whether to order detention, in addition to considering the weight of the evidence against the Defendant, the Court

> shall . . . take into account the available information concerning . . . the history and characteristics of the person, including - the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings. . . .

As described in Government Sealed Exhibits 6-10 and the testimony of Special Agent Curran, there is a serious risk that the Defendant will flee if released.  First, there is evidence that the Defendant is planning to leave the United States to a country from which the United States could not extradite him. This information comes from two reliable sources.  See Government Sealed Exhibits 6-8.  As revealed through the cross-examination of Special Agent Curran, the confidential informant ("CI") who provided information as to the defendant's future plans was initially mistaken as to the defendant's new address on Belmont Street.  This mistake does not cast doubt on the veracity on the other information provided by the CI.  This CI has provided information in another investigation that led to a large seizure of contraband.

Second, the evidence has demonstrated that the Defendant has

ties to foreign countries and financial resources to frequently travel outside of the United States.  The surrender of the Defendant's passport will not guarantee that the Defendant would not find the financial resources and a manner to leave the United States (i.e., through Canada).  Third, the Defendant is facing 27-33 months imprisonment under the Federal Sentencing Guidelines if convicted of the charged offenses.

Furthermore, this is not the typical case.  In addition to the usual reason to flee to avoid charges, the Government has presented evidence that the Defendant wants to leave the United States to engage in other conduct.  See Government Sealed Exhibit 6, ¶ 11.  The Government has uncovered evidence showing the Defendant likely committed other more serious crimes.  The Defendant now knows there is a possibility he will facing additional charges increasing his incentive to flee.

Based upon the foregoing, the Government respectfully requests that this Court find (1) probable cause that the Defendant committed the crimes described in the Complaint and (2) there is a serious risk that the Defendant will flee and no conditions would reasonably assurance his presence at future

proceedings in this matter and therefore detention is warranted.

Respectfully submitted,
MICHAEL J. SULLIVAN
United States Attorney

By:  /s/ B. Stephanie Siegmann
B. STEPHANIE SIEGMANN
Assistant U.S. Attorney

Date: December 6, 2004

CERTIFICATE OF SERVICE

I do hereby certify that a copy of foregoing memorandum was served upon the counsel listed below by electronic notice and facsimile on this 6th day of December 2004:

Stephen CampoBasso, Esq.
54 Main Street
Leominster, MA 02110

/s/ B. Stephanie Siegmann
B. Stephanie Siegmann
Assistant U.S. Attorney

15